IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| ROSS M. MCWAY,<br><br>        Plaintiff,<br><br>vs.<br><br>WARDEN CHAE HARRIS,<br><br>        Defendant. | CASE NO. 3:20-CV-01927-PAB<br><br>DISTRICT JUDGE PAMELA A. BARKER<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

On July 13, 2020, Petitioner Ross M. McWay ("Petitioner" or "Mr. McWay") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.[1] (ECF Doc. 1 ("Petition").) The Petition was reassigned and automatically referred to the undersigned on October 6, 2021 pursuant to General Order 2021-15.

Respondent Warden Chae Harris ("Respondent") filed his Answer / Return of Writ on November 13, 2020. (ECF Doc. 7.) Mr. McWay did not timely file his Traverse, but later filed a two-part letter with the Court, which was docketed on April 25, 2022 and May 9, 2022. (ECF Docs. 9, 11.) Respondent filed a Motion to Strike the first part of the letter on April 29, 2022. (ECF Doc. 10.) On February 6, 2023, the Court denied the Motion to Strike, deemed the two-part letter to be Mr. McWay's Traverse, and permitted Respondent to file a Reply to the

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)). Mr. McWay's Petition was docketed in this Court on August 28, 2020. (ECF Doc. 1.)

1

Traverse. (ECF Doc. 12.) Mr. Harris filed his Reply on February 14, 2023. (ECF Doc. 13.) The briefing is thus complete, and this case is now ripe for review.

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Mr. McWay's § 2254 Petition on the basis of procedural default.

## I. Factual and Procedural Background

A summary of the factual and procedural background is provided below to give context for this report and recommendation.

### A. Factual Background

As detailed by the Ohio Court of Appeals:

> [¶ 2] McWay had been in a relationship with Wendy Jeffers ("Jeffers") for about one year as of January, 2017. Tr. 261, 364- 365. In 2016, McWay was incarcerated, awaiting a trial scheduled on a charge not related to this present case. Tr. 249. An inmate incarcerated with McWay, Casey Smith ("Smith"), later testified at trial that Jeffers visited McWay at the jail on January 1, 2017, and broke up with him. Tr. 244. Smith also testified that, after McWay had this conversation with Jeffers, McWay told him that he was going to kill Jeffers when he was released from prison by "chok[ing] her out" and that he was "going to wear a sleeve on his arm so no DNA would show * * *." Tr. 243-244. Two other inmates—Tyler Bradford ("Bradford") and Anthony Lehman ("Lehman")—testified at trial that they heard McWay make these statements to Smith. Tr. 293-294, 354.
>
> [¶ 3] On January 13, 2017, McWay was released from jail after he was tried and acquitted of the charge against him. Tr. 367. IC, Jeffers's son, testified at trial that he saw McWay on his mom's property on the evening of January 13, 2017. Tr. 262. The next day, on January 14, 2017, IC went to spend the night at his cousin's house. Tr. 264. He testified at trial that his mom was home alone Saturday evening. Tr. 268. Around 9:00 P.M. on January 14, 2017, Jeffers texted IC and indicated that McWay was coming to her house to pick up some clothing. Tr. 264. Jeffers asked IC where the clothes were, and IC called Jeffers to tell her where the clothes had been stored. Tr. 264.
>
> [¶ 4] On January 15, 2017, Genevieve Dunlap, a communications officer with the Lima Police Department, received a call at work in which the caller requested a welfare check on Jeffers. Tr. 210-211. The caller worked with Jeffers and indicated that Jeffers had not been at work. Tr. 211. In response to this call, Patrolmen Cory Noftz ("Noftz") and Chad Kunkleman ("Kunkleman") were dispatched to Jeffers's home in Lima, Ohio. Tr. 223. After attempting to make contact with Jeffers, Noftz

and Kunkleman entered Jeffers's home and found Jeffers's body in her bathroom. Tr. 223, 224. Her body was slumped over the side of her bathtub with her back facing the bathroom door. Tr. 225. An identification officer for the Lima Police Department, Michael Carman ("Carman"), testified at trial that Jeffers's body was leaning over the side of the tub; that the tub was not filled with water; and that her hair was wet. Tr. 314. Jeffers's shorts were bunched up as though she was pulled to the edge of the bathtub. Tr. 372. Carman also testified that the house did not show any signs of forced entry. Tr. 316.

[¶ 5] After the patrolmen had secured the area, Kunkleman was approached outside the house by IC, who had just been notified of his mother's death. Tr. 264, 266. IC indicated to Kunkleman that McWay had gone to Jeffers's house on the night of Saturday, January 14, 2017, in order to get some of his clothes from Jeffers. Tr. 238, 264. Danielle Holland ("Holland") was interviewed by the police as she was acquainted with McWay. Ex. 46. She told Detective Steve Stechschulte ("Detective Stechschulte") that McWay spent the night of January 14, 2017, with her at a friend's house. Tr. 347. Holland then told Detective Stechschulte that McWay left at around midnight on Saturday night and returned to the house roughly three hours later. Ex. 46. Tr. 394, 400. At trial, Holland testified that she could not recall these details but did eventually admit that McWay left the house they were staying at late at night on January 14, 2017, and returned several hours later. Tr. 348.

[¶ 6] On January 18, 2017, an autopsy was performed by Dr. Diane Scala-Barnett ("Dr. Scala-Barnett") on Jeffers. Tr. 378. The autopsy revealed that Jeffers died of strangulation. Ex. 44. Tr. 453. Jeffers also had bruises on her chin, right eye, right hand, left elbow, lower legs, and lip. Ex. 43. Jeffers's hyoid bone was fractured, indicating that there was "lateral compression—side to side compression" across her throat. Tr. 441. On January 19, 2017, McWay sat down for an interview with Detective Stechschulte ("Detective Stechschulte"). Tr. 387. Ex. 46. During this interview, McWay stated the following:

> **McWay: I couldn't get outta there. I just, I wanted to go but I didn't want to go but like I said, things weren't goin' nowhere. The conversation, it wasn't like the one the night before when it was all lovey dovey and yeah, yeah, yeah. There was never no decisions, so. We just kept goin' back and forth a little bit with words, harsh words, but just "you cheated on me. You ripped my soul out. I loved you more than any other guy. I left my family to be with you. You made me look like an a\*\*." Then we sat back down on the couch. She tried to get back up; she grabbed me again, so I just put my hands around her throat. I was tellin' her I'm going to leave. I just didn't realize the strength that I had in it. And then she just kind of fell over a little bit, like halfway and was just looking at me**. \* \* \*

3

> **Detective Stechschulte: So what did you do next**?
>
> **McWay: I was callin' her name and telling her to wake up. I didn't mean for things to go this way. It wasn't supposed to go that way. It wasn't supposed to go that way.** * * * **It was an accident. I just, I—I didn't, I didn't know the strength I was puttin' on her and—and when she passed out and wouldn't respond I was just like f\*\*\*, f\*\*\*, f\*\*\***.

Ex. 46. An edited version of this interview was admitted at trial. Ex. 46.

[¶ 7] Shortly after Jeffers's body was found, three inmates, who had been in jail with McWay in January of 2017, got in contact with Detective Stechschulte. Tr. 251. All three of these inmates— Smith, Lehman, and Bradford—told Detective Stechschulte that McWay said he was going to strangle Jeffers when he was released from jail. Tr. 244, 293-294, 354. On January 27, 2017, McWay was charged with one count of aggravated murder in violation of *R.C. 2903.01(A)*. Doc. 1. After his trial, on August 31, 2017, the jury found McWay guilty of one count of aggravated murder in violation of *R.C. 2903.01(A)*. Doc. 95. He was sentenced on the same day. Tr. 453.

*State v. McWay*, No. 1-17-42, 2018 WL 4293346, \*1-\*2 (Ohio Ct. App. Sept. 10, 2018).

**B.** **State Court Trial**

On January 27, 2017, Mr. McWay was indicted by an Allen County Court of Common Pleas Grand Jury on one unspecified felony count of Aggravated Murder under Ohio Revised Code Sections 2903.01(A), 2903.01(F), and 2929.02(A), with a Repeat Violent Offender Specification under Ohio Revised Code Section 2941.149(A). (ECF Doc. 7-1, pp. 4-5.) Prior to trial, Mr. McWay filed a response to the State's notice of intent to use evidence pursuant to Evid.R. 404(B) and motion in limine for a prior conviction and period of incarceration. (*Id.* at pp. 7-9.) Mr. McWay also filed a motion for jury instructions as to lesser included offenses of Murder and Involuntary Manslaughter. (*Id.* at pp. 11-14.) The case proceeded to jury trial. (ECF Doc. 7-2.) During the trial, Mr. McWay's counsel made an oral motion for mistrial based on the prosecution's failure to prepare a witness and prevent discussion of a separate conviction of manslaughter after a witness stated: "He already had a body on his case." (*Id.* at pp. 263-69.)

4

The trial court denied the motion for mistrial and instructed the jury to ignore the challenged testimony. (*Id.* at p. 270.) At the request of Mr. McWay's counsel, the court also informed the jury that although Mr. McWay was in jail with the witness at the time described in the testimony, Mr. McWay was ultimately acquitted at trial of the offense for which he was in jail at that time. (*Id.* at pp. 269-70.)

The jury found Mr. McWay guilty of aggravated murder in violation of Ohio Rev. Code §§ 2903.01 (A)&(F) and 2929.02(A) on August 31, 2017. (ECF Doc. 7-1, p. 17.) The trial court held a hearing on the repeat violent offender specification, where the court found Mr. McWay was a repeat violent offender as defined in Ohio Rev. Code 2929.01(CC) and found him guilty of the repeat violent offender specification pursuant to Ohio Rev. Code 2941.149(A). (*Id.*) Mr. McWay was ordered to serve a term of life in prison without parole under Count One of the indictment on September 1, 2017. (*Id.* at p. 19.)

**C.     Direct Appeals**

Mr. McWay filed a notice of appeal to the Ohio Third District Court of Appeals on October 21, 2017. (*Id.* at pp. 20-21.) He requested, and the court granted, appointment of new counsel on appeal. (*Id.* at pp. 22, 24.) Mr. McWay was provided with an Assistant State Public Defender as counsel for his direct appeal. (*Id.* at p. 25-26.)

Mr. McWay raised three assignments of error in his direct appeal:

I. The trial court erred when it denied Ross M. McWay's request for a mistrial. Sixth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 10; *State v. Franklin,* 62 Ohio St.3d 118,127,580 N.E.2d 1 (1991).

II. Ross M. McWay's aggravated-murder conviction was against the manifest weight of the evidence. weight of the evidence. Ohio Constitution, Article IV, Section 3(B)(3); R.C. 2903.0l(A).

III. Trial counsel rendered ineffective assistance at sentencing. Sixth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 10; *Missouri v. Frye,* 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); *Strickland v.*

5

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

(*Id.* at p. 32.) The State filed a brief in opposition (*id.* at pp. 62-88) and Mr. McWay filed a reply brief (*id.* at pp. 93-103). In a decision dated September 10, 2018, the Ohio Third District Court of Appeals overruled Mr. McWay's assignments of error and affirmed the judgment of the trial court. *McWay*, 2018 WL 4293346 at *9.

On November 19, 2018, Mr. McWay filed a *pro se* notice of appeal in the Ohio Supreme Court, and a motion for delayed appeal. (ECF Doc. 7-1, pp. 130-34.) The Ohio Supreme Court granted Mr. McWay's motion for delayed appeal on January 23, 2019. (*Id.* at p. 158.) Mr. McWay raised the following three propositions of law in his jurisdictional memorandum:

1. The trial court erred when it denied Ross M. McWay's request for a mistrial. Sixth Amendment to U.S Constitution, Ohio Constitution, Article 1, Section 10.

2. Ross M. McWay's aggravated murder conviction was against the manifest weight of the evidence. Ohio Constitution, Article 4, section 3 [B] [3]; R.C 2903.01[A].

3. Trial counsel rendered ineffective assistance at sentencing. Sixth Amendment to the U.S Constitution; Ohio Constitution, Article 1, Section 10.

(*Id.* at p. 160.) The State did not file a written response. On May 1, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. McWay*, 121 N.E.3d 409 (Ohio 2018). Mr. McWay did not file a petition for certiorari in the United States Supreme Court; his deadline for filing expired July 29, 2019. *See* Sup. Ct. R. 13.

**D.     Postconviction Relief**

On September 17, 2019, Mr. McWay filed a *pro se* petition to vacate or set aside judgment of conviction or sentence in the Allen County Court of Common Pleas. (ECF Doc. 7-1, pp. 196-213.) In that petition, he raised the following claims:

6

> **Claim Number One**: The 6th Amendment right to counsel was violated due to ineffective assistance of counsel.
>
> Short statement of facts supporting the claim:  Trial counsel failed to develop working relationship with client, failed to have any sort of sound defense strategy; track down useful evidence. Counsel failed to raise credibility, cross-examine half of the State's witnesses or hire phone & medical experts among other errors that prevented McWay from receiving a fair trial.
>
> **Claim Number Two**:  The 14th Amendment due process clause was violated because of prosecutorial misconduct.
>
> Short statement of facts supporting the claim: The state violated my 14th amendment right to due process by presenting a case based on hearsay and known false testimony. The state allowed Det. Stechschulte to testify about non-existent phone records, also violated a court order to control their witness. State failed to interview a witness that the alleged motive came from, because of this misconduct the jury was misled and prevented McWay from receiving a fair trial. McWay also acknowledged that the petition was untimely because he received a late notice from counsel that they would not be filing this petition.

(*Id.* at pp. 192-205.)  On September 24, 2019, the state trial court denied Mr. McWay's petition and related motions, finding that Mr. McWay's petition for postconviction relief was untimely, his claim of ineffective assistance of counsel was barred by *res judicata*, and he did not have a right to counsel or the appointment of an expert for his postconviction relief petition.  (*Id.* at pp. 214-21.)  Mr. McWay did not file a timely appeal in the state appellate court, and his filing deadline expired on October 24, 2019.  *See* Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

Mr. McWay also filed a motion to vacate court costs on September 17, 2019 (*id.* at pp. 218-19), which the trial court denied on September 23, 2019 (*id*. at pp. 222-23).   On October 16, 2019, Mr. McWay filed a timely *pro se* appeal notice in the state appellate court to appeal the trial court's denial of his motion to vacate court costs.  (*Id.* at pp. 224-25.)  He raised the following claim on collateral appeal:

> Trial court erred when it imposed court cost without assessing the defendant's ability to pay. *State v. Maloy*, 6th Dist. Lucas no. L-10-1350, 2011-Ohio-6919, ¶ 14 citing *State v. Jobe*, 6th dist. Lucas no. L-07-1413, 2009-Ohio- 4066,¶ 80.

7

(ECF Doc. 7-1, p. 235.) The State filed a brief in opposition. (*Id.* at pp. 253-82.) On March 2, 2020, the state appellate court overruled Mr. McWay's assignment of error and affirmed the trial court judgment. *State v. McWay,* No. 1-19-65, 2020 WL 995011 (Ohio Ct. App. Mar. 2, 2020). Mr. McWay did not appeal this decision to the Ohio Supreme Court; his filing deadline expired on April 16, 2020. *See* Ohio S. Ct. R. Prac. 7.01(A)(1)(a)(i); Ohio S. Ct. R. Prac. 3.03(A)(1).

## II. Federal Habeas Corpus Petition

Mr. McWay raises the following two Grounds for relief in this court:

**GROUND ONE:** Ineffective Assistance of Counsel
Supporting Facts: Trial counsel failed to develop working relationship with client or have any sort of sound defense strategy, failed to track down a relevant witness, raise credibility issues, hire medical and phone experts, properly cross examine witness, failed to interview medical coroner.

**GROUND TWO:** Prosecutorial Misconduct
Supporting Facts: The state presented a case based on hearsay and known false testimony, failed to track down the relevant source of the alleged information/motive. State did not properly prepare their witness and asked leading questions they knew would bring up prior manslaughter conv[iction]. False testimony by Detectives about nonexist[e]nt evidence.

(ECF Doc. 1, pp. 5, 7.)

For the reasons set forth below, the undersigned finds dismissal of the Petition is warranted because the claims in Grounds One and Two have been procedurally defaulted. Accordingly, the undersigned recommends that the Court **DISMISS** the Petition with prejudice.[2]

## A. Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the

---

[2] Respondent has included alternate arguments on the merits of Petitioner's claims. (ECF Doc. 7, pp. 35-48.) Because Mr. McWay has procedurally defaulted both grounds for relief, the undersigned does not reach Respondent's alternate arguments.

effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

**B.     Whether Claims Were Procedurally Defaulted**

Respondent argues the claims in Grounds One and Two are procedurally defaulted and are not available for federal habeas corpus review. (ECF Doc. 7, pp. 22-25, 32-34.) Respondent further argues that Mr. McWay has not shown that cause and prejudice, or miscarriage of justice warrant excusing that default. (*Id.* at pp. 23, 33.) Mr. McWay focuses his Traverse on the merits of his Petition and does not directly respond to Respondent's assertions that his claims have been procedurally defaulted. (ECF Doc. 11, pp. 4-5.)

9

### 1. Legal Standard for Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still

available at the time of the federal petition." *Id*. at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default applies rather than exhaustion. *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4)

whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

In order to overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### 2. Whether Claims were Procedurally Defaulted

In Ground One, Mr. McWay claims he was denied effective assistance of trial counsel when his attorney failed to: develop a working relationship with him; have a sound defense strategy; track down a relevant witness; raise credibility issues; hire medical and phone experts; interview the medical coroner; or properly cross-examine witnesses. (ECF Doc. 1, p. 5.) He did not raise these arguments on direct appeal, instead raising a separate claim of ineffective assistance of trial counsel at sentencing. (ECF Doc. 7-1, pp. 32, 43-47.) It was not until his *pro se* petition for state postconviction relief that Mr. McWay asserted an ineffective assistance of counsel claim like the claim in Ground One. (*Id.* at pp. 197-202.)

In Ground Two, Mr. McWay raises a claim of prosecutorial misconduct, stating that the state presented a case based on hearsay and false testimony, failed to track down the alleged

source of the information, did not properly prepare its witness, asked leading questions regarding a prior manslaughter conviction, and provided false testimony regarding nonexistent evidence made by a detective during trial.  (ECF Doc. 1, p. 7.)  Mr. McWay also did not raise these arguments on direct appeal, arguing instead that the trial court erred in denying his request for a mistrial and that his conviction was against the manifest weight of the evidence.  (ECF Doc. 7-1, pp. 32, 35-42.)  It was not until his *pro se* petition for state postconviction relief that Mr. McWay asserted a prosecutorial misconduct claim like the claim in Ground Two.  (*Id.* at pp. 203-05.)

After reviewing Mr. McWay's September 17, 2019 petition for postconviction relief, the Court of Common Pleas of Allen County held that the petition was "filed too late under R.C. 2953.21(A)(2) since the transcript of the trial . . . was filed in the court of appeal . . . on January 29, 2018."  (ECF Doc. 7-1, p. 214.)  The court also noted that Mr. McWay's conviction had been affirmed by the court of appeals following a direct appeal, and that res judicata precluded his claims for post-conviction relief.  (*Id.* at pp. 214-15.)  Mr. McWay did not file an appeal of that common pleas decision with the Third District Court of Appeals or the Ohio Supreme Court.

In the Petition, Mr. McWay explains that he did not exhaust the claims in Grounds One or Two because he was contacting a relevant witness to the case and missed the deadline for filing.  (ECF Doc. 1, pp. 5-7.)  It is not clear from the Petition which deadline he is referencing, and he does not clarify the issue in his Traverse.  (*See* ECF Docs. 9, 11.)

### i. Whether Mr. McWay Failed to Comply with State Procedural Rules

The first way a petitioner may procedurally default is by failing "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Williams*, 460 F.3d at 806.  Courts in the Sixth Circuit apply the four-prong *Maupin* analysis.  *See id.* at 807 (citing *Maupin*, 785 F.2d at 138).

13

Under the first two prongs of the *Maupin* analysis, this Court must determine whether Mr. McWay failed to comply with a procedural rule and whether the state enforced that rule. *See* 785 F.2d at 138. A review of the evidence reveals that the first two prongs have been met.

First, the Ohio procedural rule governing petitions for postconviction relief required Mr. McWay to file his petition "no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgement of conviction or adjudication," or by January 29, 2019. Ohio R.C. § 2953.21(A)(2)(a). The state court found he failed to meet that deadline when he filed his petition almost nine months later, in September 2019. (ECF Doc. 7-1, p. 214.) This evidence alone is sufficient to establish that the first two prongs of the *Maupin* analysis have been met.

Second, the evidence reflects that Mr. McWay did not raise the claims in Grounds One and Two in his direct appeal, even though Ohio law establishes a procedural bar under the doctrine of res judicata when a defendant raises constitutional claims in postconviction proceedings based on evidence in the record that could have been fully litigated on direct appeal. *See State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967). The state court adjudicating the petition for postconviction relief found Mr. McWay was barred by the doctrine of res judicata from asserting his claim for ineffective assistance of counsel in the postconviction petition.[3] (ECF Doc. 7-1, pp. 214-15.) This evidence provides an additional basis for a finding that the first two prongs of the *Maupin* analysis have been met.[4]

---

[3] The state court indicated that the petition for postconviction relief "raised one claim: that [Mr. McWay] was denied effective assistance of trial counsel." (ECF Doc. 7-1, p. 214.) Its ruling as to res judicata was therefore apparently directed to the ineffective assistance of counsel claim alone, even though the petition actually raised two claims, for ineffective assistance of counsel (*id.* at pp. 197-202) and prosecutorial misconduct (*id.* at pp. 203-05).

[4] Although a petitioner may sometimes avoid a res judicata bar by introducing evidence outside of the record, *State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982), Mr. McWay does not argue this standard has been met and the record reflects that no such evidence was introduced with his state postconviction petition. (See ECF Doc. 7-1,

14

The third prong of the *Maupin* analysis asks whether the procedural rules establish an adequate and independent state law ground by which the claims may be procedurally defaulted. *See* 785 F.2d at 138. The Sixth Circuit has held that a failure to timely file a motion for postconviction relief is an adequate and independent state law ground to establish procedural default and foreclose federal habeas review. *See White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 275 (6th Cir. 2019) (collecting cases). The Sixth Circuit has also held that Ohio's rule "that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings" is an adequate and independent state ground that can foreclose federal review under a *Maupin* analysis. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000). Thus, the third prong of the *Maupin* analysis has also been met, and the claims in Grounds One and Two are procedurally defaulted unless "cause and prejudice" excuse his procedural default under the fourth prong of the *Maupin* analysis. *See* 785 F.2d at 138.

### ii. Whether Mr. McWay Pursued the Claims in Grounds One and Two Through Ohio's Ordinary Appellate Review Procedures

Even if procedural default were not appropriate under *Maupin*, the Sixth Circuit recognizes an additional basis for procedural default where a petitioner "fail[s] to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848). That is because this Court cannot consider issues on federal habeas review that were not fairly presented at every level of the Ohio state courts. *See Baston*, 282 F.Supp.2d at 661. A federal claim for relief is only "fairly presented" if it was presented to the state court under the same constitutional theory as the later federal claim, including the same legal and factual basis. *See Williams*, 460 F.3d at 806.

---

pp. 202, 205 (indicating no supporting evidence is attached to petition), 209-10 (informing Petitioner investigation by Ohio Public Defender did not uncover materials or information to support a postconviction petition).)

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*

Mr. McWay did not present the claims in Grounds One and Two at every level of the Ohio state courts. Although he filed a direct appeal with the Third District Court of Appeals on October 21, 2017, he did not include the claims set forth in Grounds One or Two of the Petition. (*Compare* ECF Doc. 7-1, p. 32 *with* ECF Doc. 1, pp. 5, 7.) His direct appeal did raise a claim for ineffective assistance of trial counsel, but that claim was directed exclusively to his attorney's actions at the sentencing phase (ECF Doc. 7-1, p. 32) while the claim in Ground One is directed exclusively at his attorney's actions before and during trial (ECF Doc. 1, p. 5). Mr. McWay's direct appeal therefore did not state a claim for ineffective assistance of counsel that included the same legal and factual basis as the claim he later asserted in Ground One of the Petition.

Mr. McWay did later raise claims like Grounds One and Two in the *pro se* postconviction petition filed on September 17, 2019. (ECF Doc. 7-1, pp. 192-205.) However, he did not appeal that denial to the Third District Court of Appeals or the Ohio Supreme Court, and an appeal of the state court's denial of his postconviction petition is no longer available under Ohio law. *See Nichols*, 463 N.E.2d at 378 (finding delayed appeal under App. R. 5(A) not available in appeal of postconviction relief determination under Ohio Rev. Code § 2953.23(B)); Ohio S. Ct. Prac. R. 7.01(A)(4)(c) (stating delayed appeals are unavailable in cases involving postconviction relief).

Because Mr. McWay failed to fairly present the claims in Grounds One and Two at every level of the Ohio state courts and state law no longer allows him to pursue appellate review, the undersigned concludes that the claims in Grounds One and Two were procedurally defaulted. *See Williams*, 460 F.3d at 806. Accordingly, the undersigned must consider whether cause and prejudice or a fundamental miscarriage of justice serve to excuse the default.

### iii. Whether Cause and Prejudice Excuse Procedural Default

To establish "cause" to excuse procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. Ordinarily, he must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). As the U.S. Supreme Court explained:

> Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Murray*, 477 U.S. at 492. An attorney's "ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

Here, the only statements relevant to "cause" by Mr. McWay are the explanations in his Petition as to why he did not exhaust his state remedies. As to Ground One, he wrote: "I was contacting a relevant witness to the case and missed my deadline." (ECF Doc. 1, p. 5.) As to Ground Two, he wrote: "Trying to contact a relevant witness with key information to dispute state's premeditation theory, that would've changed the outcome." (*Id.* at p. 7.) It is not clear from the Petition which filing deadline he is referencing, and he does not clarify the issue in his Traverse. (*See* ECF Docs. 9, 11.) In his Traverse, he merely states: "I have been look[ing] through case law trying to find what fits my case, state will argue that I am out of line or at a procedural default." (ECF Doc, 11, p. 4.) He does not otherwise explain why procedural default should not be applied in his case. (*See* ECF Docs. 9, 11.)

The limited explanations offered by Mr. McWay are insufficient to meet the "cause" standard. Even if he had stated more clearly what witness he was attempting to contact and what filing deadlines he missed as a result, his explanation that he missed deadlines because he was doing other work relating to his defense does not establish that an external factor caused him to miss the filing deadlines, or that his default otherwise "cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. The undersigned accordingly concludes that Mr. McWay has procedurally defaulted on the claims in Grounds One and Two of the Petition, and has not met his burden to demonstrate "cause" to excuse that procedural default.

### iv. Whether "Actual Innocence" Excuses Procedural Default

A procedural default may also be excused where a failure to consider a claim will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496). For an actual innocence claim to be credible, a petitioner must "support his allegations with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He must further "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. This standard is intended to permit petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice." *Id.* (internal quotations omitted). Notably, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Mr. McWay has presented no new evidence on which the undersigned can rely to demonstrate his actual innocence, and does not argue "actual innocence" as a basis for excusing

18

his procedural default.  (*See* ECF Docs. 1, 9, 11.)  The undersigned finds no miscarriage of justice will occur if his claims are not considered.

For all of the reasons set forth above, the undersigned finds Grounds One and Two of the Petition were procedurally defaulted and Mr. McWay did not meet his burden to show "cause and prejudice" or a fundamental miscarriage of justice to excuse the default.  Accordingly, the undersigned recommends the District Court **DISMISS** the Petition with prejudice.

### III.     Conclusion and Recommendation

The undersigned accordingly recommends that the Court **DISMISS** the Petition with prejudice on the basis of procedural default.

Dated: June 30, 2023

    */s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).